UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 21 2015 ★

LONG ISLAND OFFICE

----------------------------------------------------------x

KBM WORLDWIDE, INC.

                  Plaintiff,

    -against-

CMG HOLDINGS GROUP, INC.
AND GLENN LAKEN,

                  Defendants.

----------------------------------------------------------x

Civil Action No.:

**CV 15 4935**

AZRACK, J.

LINDSAY, M

## COMPLAINT

Plaintiff, KBM WORLDWIDE, INC. ("KBM"), files this Complaint and alleges the following:

### I. SUMMARY

1.     KBM brings this action for equitable relief and damages caused by violations of the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) thereunder by GLENN LAKEN("Laken") and CMG HOLDINGS GROUP, INC. ("the Corporate Defendant"), (collectively, jointly and severally, with Laken, "the Defendants"). Through this action, KBM seeks to recover losses caused by the Defendants' intentional and/or reckless misconduct, including compensatory damages, which losses may only be avoided if the equitable relief and injunctive relief described herein below is granted.

2.     That at all relevant times, Laken was and remains the Chief Executive Officer ("CEO") and a Director of the Corporate Defendant, has been and remains in total control over the Corporate Defendant through his domination of the Board of Directors.

3.     That KBM was an investor in the Corporate Defendant and was well-known to the Defendants.  KBM's business strategy at the time of the stock purchases and loans and issuance of notes at issue was to invest in publicly-traded, nano-cap companies whose securities are traded on the Over the Counter Bulletin Board, OTCQB and the "Pink Sheets."  Nano-cap companies, such as the Corporate Defendant, are often capital-constrained, as their low market capitalization hinders their access to banks or investment firms.  KBM provides capital to such companies, as an investment in return for shares purchased at a discount to market price.

4.     That KBM invested a total of $220,000 in the Corporate Defendant by purchasing securities directly from the Corporate Defendant and making loans thereto, and has sustained damages of $252,200 exclusive of attorney's fees, pre judgment interest, costs and late fees.

## II.        JURISDICTION AND VENUE

5.     This action arises under the anti-fraud provisions of the Securities Exchange Act of 1934 (15 U.S.C. §78j(b)), and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. §240.10b-5). The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa). Defendants, directly and indirectly, singly or in concert, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, or of the mails in connection with the acts, practices and courses of conduct alleged in this Complaint, certain of which occurred within the Eastern District of New York.

6.     Venue is proper in this court pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), because certain of the transactions, acts, practices, and courses of conduct constituting violations of duties established by the Federal Securities Laws occurred within this judicial district.  Additionally, KBM  transacts business and maintains its principal place of business in this district. That further, the Corporate Defendant has

contractually agreed with KBM to fix venue for any action in the State of New York, County of Nassau, which is within the Eastern District and the jurisdiction of this Court.

7.      That in connection with the acts alleged in this Complaint, the Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### III. PARTIES

8.      That at all times relevant herein, KBM has been and remains a corporation organized and existing under the laws of the State of New York with an office for business in the County of Nassau, not engaged in the banking business.

9.      That at all times relevant herein, the Corporate Defendant has been and remains a corporation organized and existing under the laws of the State of Nevada, within an office for business in the State of Illinois, County of Cook.

10.      That at all times relevant herein, defendant Laken has been and remains a resident of the State of Illinois, County of Cook.

### IV.      FACTUAL ALLEGATIONS

11.      That heretofore and from time to time, the Defendants have made material misrepresentations of fact to KBM, knowing that such misrepresentations were false, and upon which KBM relied and was damaged.

12.      That as a result of these material misrepresentations, KBM invested $220,000 in the Corporate Defendant and sustained damages thereby.

## AS AND FOR A FIRST CAUSE OF ACTION
## <u>PROMISSORY NOTES DEFAULTS</u>

13.     KBM repeats and realleges each and every allegation contained in paragraphs 1 through 12 of this Complaint with the same force and effect as if fully set forth at length herein.

14.     That on or about October 6, 2014, the Corporate Defendant, as borrower, made, executed and delivered to KBM a convertible promissory note ("the October Note") in the amount of $115,000 (with an original issue discount of $11,000), which Note was issued pursuant to a Securities Purchase Agreement ("the October Agreement") of even date, which provided for certain issuance of, and conversion rights in and to the common stock of the Corporate Defendant.

15.     That the October Note and October Agreement provided, as does all of the Notes and Agreements purchased by KBM, that the failure of the Corporate Defendant to maintain its obligations to keep current filings with the United States Securities and Exchange Commission under the Federal Securities Laws would be an event of default and would cause the principal amount due under the October Note to be increased to 150% of the amount originally due.

16.     That the Corporate Defendant failed to maintain its obligations to keep such filings current, and it therefore defaulted, causing the original principal amount due to be increased from $115,000 to $172,500.

17.     That KBM was able to successfully convert various portions of the October Note into stock of the Corporate Defendant during the period of June 9, 2015 through July 16, 2015, leaving a balance due after said conversions of $42,200.

18.     That on or about November 11, 2014 the Corporate Defendant, as Borrower made, executed and delivered to KBM a Convertible Promissory Note ("the November Note") in

4

the amount of $62,000 (with an original issue discount of $9,000), which Note was issued pursuant to a Securities Purchase Agreement ("the November Agreement") of even date, which likewise provided for certain issuance of, and conversion rights in and to the common stock of the Corporate Defendant.

19.     That on or about December 18, 2014 the Corporate Defendant as borrower made, executed and delivered to KBM a Convertible Promissory Note ("the December Note") in the amount of $43,000, which Note was issued pursuant to a Securities Purchase Agreement ("the December Agreement") of even date, which again provided for certain issuance of, and conversion rights in and to the common stock of the Corporate Defendant.

20.     That the Agreements between the parties provided that venue for any action between the parties would be the State of New York, County of Nassau pursuant to §4.6 of the Convertible Promissory Note and §5 of the Securities Purchase Agreements.

21.     That in the Notes, the Corporate Defendant: (i) granted KBM  the right to convert all or any part of the outstanding and unpaid principal amount and accrued interest of the Notes into fully paid and non-assessable shares of common stock of the Corporate Defendant; and (ii) agreed that an Event of Default of the Notes shall occur upon the failure of the Corporate Defendant to timely issue shares of common stock of the Corporate Defendant to KBM  upon receipt of a conversion notice delivered pursuant to the Notes. That pursuant to Section 1.3 of the Notes, the Corporate Defendant is required at all times to have authorized and held in reserve eight times the number of shares that are actually issuable and available for purposes of conversion of the debt represented by the Notes into stock.  That it further provides that the amount held in reserve will be increased from time to time so as to meet the requirements of allowing shares to be held in reserve so that shares can be converted as and when required by

KBM.  That the default and failure of the Corporate Defendant to maintain such reserve shares is an event of default under Section 3.2 of the Notes thereby causing the Corporate Defendant to be liable and responsible for 200% of the amount of principal due and owing under the Notes.

22.     That the Corporate Defendant has willfully and unlawfully refused to deliver the Conversion Shares and rather has intentionally sought to hinder, delay and avoid the Corporate Defendant's conversion obligations pursuant to the Notes and Agreements at the direction of Laken, which actions were beyond the scope of his status and duties as Chief Executive Officer and Director of the Corporate Defendant, and instead were undertaken for his own personal gain.

23.     That Laken has sole control and authority to effectuate an increase in the authorized shares of the Corporate Defendant, and despite the Defendants' joint commitments to increase the amount of authorized shares, both Laken and the Corporate Defendant had steadfastly refused to effectuate such increase.

24.     That the Corporate Defendant has failed and refused to hold and/or maintain sufficient shares of its stock in reserve, so as to permit the conversion process to go forward from time to time, in direct violation of the Corporate Defendant's contractual obligations and in derogation of KBM's rights.

25.     That stated differently, the Notes and the Agreements specifically require and provide that the Corporate Defendant must maintain sufficient shares of stock in order to permit KBM to convert the debt represented by the Notes into such stock and that a failure to maintain such reserve shares is a material breach of the Notes and the Agreements.

26.     That by virtue of the foregoing, the Corporate Defendant is in default under the Notes and no such default has been cured.

27.     That the Corporate Defendant and Laken have not cured the defaults with respect to the failure to maintain sufficient reserve shares, thereby causing damages to KBM  in an amount to be determined by the Court but not less than an amount equal to $252,200 (comprised of $42,200 remaining balance due on the October Note, $124,000 in the defaulted amount on the November Note, and $86,000 in the defaulted amount on the December Note)  together with applicable interest thereon.   These additional damages arise from the fact that the Notes expressly provides that in the event of an uncured default, the obligor will be responsible for payment of 200% of the amount of the principal balance then due as liquidated damages and not as a penalty.

28.     That moreover, pursuant to Section 1.4(g) of the Notes, the Corporate Defendant acknowledged that the liquidated damages provision contained in Section 1.4(g) is justified as damages resulting from a failure, attempt to frustrate, interference with the conversion rights are difficult if not impossible to qualify, and that the default amount was reasonable under the circumstances.

29.     That the Corporate Defendant and Laken's actions have caused damages to KBM in an amount to be determined by the Court but not less than an amount equal to $252,200 together with applicable interest thereon. The Corporate Defendant has failed to make payment of either principal or interest.  Thus, the Corporate Defendant is in default and KBM is entitled to and demands judgment in the sum of $252,200 plus interest and late fees.

## AS AND FOR A SECOND CAUSE OF ACTION
## FRAUD IN THE INDUCEMENT

30.     KBM  repeats and realleges each and every allegation contained in paragraphs 1 through 29 of this Complaint with the same force and effect as if fully set forth at length herein.

31.     That KBM made an investment in the aggregate amount of Two Hundred and Twenty Thousand Dollars ($220,000.00) in the Corporate Defendant as a result of the foregoing transactions and as a result of the Defendants' defaults and intentional wrongdoing has not received any repayment of principal or interest on the Notes (other than as set forth above) and has also been deprived of its rights and opportunities to convert the debt into Conversion Shares as aforesaid.

32.     That KBM 's willingness to assent to the terms of the investment and the Notes, and the investment itself, was caused by the fraudulent misrepresentations of the Corporate Defendant and Laken contained within the Notes and Agreements and confirmed within resolutions of the Board of Directors of the Corporate Defendant including but not limited to the representations that the Corporate Defendant would not fail to maintain sufficient shares of reserve to permit conversion of the Notes, which misrepresentation was the most crucial and important of all because it was always the bargained for expectation of KBM  and the intention of the parties that the repayment of the Notes would occur via the conversion process.

33.     That upon information and belief, the Corporate Defendant and Laken, acting in concert and based upon a conspiracy between them, made the foregoing misrepresentations with the knowledge that KBM would rely thereon, and that the Corporate Defendant had no intention to honor its obligations under the Notes and the Agreements and Laken acted unilaterally, outside of the scope of his status and duties as an Chief Executive Officer and Director and for his own personal gain solely to hinder, delay and avoid the Corporate Defendant's conversion obligations pursuant to the Notes and Agreements.

34.     That as a result of the foregoing, KBM  has been irreparably harmed.

35.     That the Corporate Defendant's and Laken's actions have caused damages to KBM in an amount to be determined by the Court but not less than an amount equal to $220,000 together with applicable interest thereon.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT – LOST PROFITS

36.     KBM repeats and realleges each and every allegation contained in paragraphs 1 through 35 of this Complaint with the same force and effect as if fully set forth at length herein.

37.     That as a direct result of the defaults of the Defendants and their failure to abide by their contractual obligations, KBM has been deprived of, and continues to be deprived of, the opportunity to acquire and to sell the common stock of the Corporate Defendant at a profit, which profits have been irretrievably lost as the markets for the common stock can no longer be recreated.

38.     That by reason of the foregoing, KBM is entitled to judgment in an amount to be determined by the Court and equal to the lost profits that KBM would have realized had the stock been made available and delivered to KBM in accordance with its Conversion Notice.

## AS AND FOR A FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT – LITIGATION EXPENSES

39.     KBM repeats and realleges each and every allegation contained in paragraphs 1 through 38 of this Complaint with the same force and effect as if fully set forth at length herein.

40.     That the Agreements provide that in the event of a dispute and/or litigation between the parties, the prevailing parties shall be entitled to recover all of its litigation expenses including reasonable attorney fees.

41.     That by reason of the foregoing, KBM is entitled to a judgment against Defendants for the reasonable legal fees and litigation expenses paid or incurred in this action.

**AS AND FOR A FIFTH CAUSE OF ACTION FRAUD:**
**VIOLATIONS OF SECTION 10(b) of the EXCHANGE ACT**
**[15U.S.C. §78j(b) and Rule 10(b)-5b THEREUNDER [17 C.F.R.§240.10b-5 (b)]**

42.     KBM repeats and realleges each and every allegation contained in paragraphs 1 through 41 of this Complaint with the same force and effect as if fully set forth at length herein.

43.     That through the foregoing conduct, the Corporate Defendant, together with and acting in concert with Laken, knowingly and recklessly engaged in manipulation and deceptive conduct in connection with a securities transaction in violation of 15U.S.C. §78j(b) and the Rules and regulations promulgated thereunder, by failing to disclose and misrepresenting the true nature of their intentions as set forth above.

44.     That the Defendants further engaged in knowing manipulation and deceptive conduct by directly representing and warranting that the Corporate Defendant and Laken would honor its obligations pursuant to the Notes and Agreements (including the obligation to maintain sufficient shares in reserve),when in truth and in fact they had no intention to do so.

45.     That in reliance on the foregoing misrepresentations and material omissions by the Defendants, KBM was induced to purchase the Corporate Defendant's securities and to make loans to the Corporate Defendant as aforesaid.

46.     That as a direct and proximate result of the Defendants' conduct, KBM suffered damages, in an amount to be determined by the Court, for not less than $252,200.

## AS AND FOR A SIXTH CAUSE OF ACTION – INJUNCTIVE AND EQUITABLE RELIEF

47.     KBM  repeats and realleges each and every allegation contained in paragraphs 1 through 46 of this Complaint with the same force and effect as if fully set forth at length herein.

48.     That the total amount due to KBM is $252,200 exclusive of any additional liquidated damages, consequential damages, default interest, statutory prejudgment interest, legal fees, court costs and litigation expenses.

49.     That while KBM is clearly entitled to a money judgment, the Corporate Defendant is clearly incapable of satisfying any such judgment obtained.

50.     That in its most recent filing required under the Federal Securities Laws, the Corporate Defendant concedes that it has total assets that are exceeded by its total liabilities thus rendering it insolvent.

51.     That the Corporate Defendant also represents therein that for that period it had a net loss and that at the end of the period, it had insufficient cash to meet its obligations, thus rendering it insolvent.

52.     That the only viable avenue available to KBM to obtain repayment of the outstanding Notes is by exercising its conversion rights and thereby obtaining unrestricted shares of stock in the Corporate Defendant and selling those shares on the open market.

53.     That at present there is an active market for the Corporate Defendant's stock which continues to trade in significant volume.

54.     That so long as that activity continues and assuming that KBM's conversion rights are not frustrated or impeded, KBM will be able to obtain the unrestricted shares, sell them

in the market place, and recover the outstanding principal indebtedness owed to it as well as anticipated profits.

55.     That the market for the shares of stock in the Corporate Defendant is extremely volatile, such that there can be no assurance that the current level of activity will continue to be sustained.

56.     That if as and when such trading subsides or is curtailed, any shares obtained by KBM at that time no longer be saleable thereby preventing KBM from recovering the indebtedness due it, thereby leading to irreparable harm based on unrecoverable judgments.

57.     That time is of the essence, and to prevent KBM from suffering such irreparable harm, KBM must immediately be permitted to exercise its conversion rights, and the Defendants must be immediately directed to cooperate with the same and to deliver the shares of stock at issue after causing sufficient additional shares to be issued and placed in reserve for delivery to KBM so that the Corporate Defendant can meet its obligations to hold and maintain sufficient shares reserved for these purposes.

58.     That because of the nature, condition, and value of the stock which KBM seeks to acquire in this action is unique to it under the facts and circumstances presented, and because KBM will suffer and sustain irreparable damage that cannot be recovered through a money judgment against the Defendants, KBM has no adequate remedy at law and is entitled to equitable relief.

59.     That by virtue of the foregoing, KBM is entitled to and demands a judgment directing the Defendants to execute and deliver all documents necessary to complete the conversion process and to deliver the stock sought by KBM and to which it is contractually entitled in the form of a mandatory injunction.

## AS AND FOR AN SEVENTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH CONTRACT

60.     KBM repeats and realleges each and every allegation contained in paragraphs 1 through 59 of this Complaint with the same force and effect as if fully set forth at length herein.

61.     That the defendant Laken was fully aware at all times of the existence and the valid and binding nature of the contracts and agreements between KBM and the Corporate Defendant.

62.     That the defendant Laken warranted and represented to KBM that in order for the Corporate Defendant to maintain sufficient shares in reserve, that Laken would cause the Corporate Defendant to engage in a "reverse" stock issuance which would result in numerous additional shares of stock being issued so that the conversion process could go forward.

63.     That Laken further warranted and represented that if the "reverse" could not be effectuated, that he would cause the Corporate Defendant to have additional shares issued and made available and that further additional shares would be produced and held in reserve from Laken's own holdings of stock.

64.     That Laken, despite these promises, never caused the "reverse" to take place, and never made available any further or additional shares from any source whatsoever, thus breaching his warranties and representations to KBM.

65.     That by making these warranties and representations, Laken demonstrated that he had the power and authority to cause such additional shares to be issued or otherwise made available so that they could be held in reserve in fulfillment of the Corporate Defendant's contractual obligations.

66.     That despite having this power and ability, Laken failed and refused to cause the additional shares to be made available, thereby directly instigating a breach of contract by the Corporate Defendant.

67.     That Laken intentionally and with malice aforethought caused the Corporate Defendant to breach its contractual agreements with KBM without any legal or factual justification based upon the breaches and defaults contained herein above.

68.     That Laken caused these breaches and defaults to take place for his own personal benefit and to maintain a higher stock price and stock value for his own holdings, and for his own financial benefit, and not for the benefit of the Corporate Defendant.

69.     That as a result, Laken is liable to KBM under the theory of intentional interference with contract, as the contracts at issue were in fact breached, thereby causing damages to KBM of at least $252,200.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

70.     KBM  repeats and realleges each and every allegation contained in paragraphs 1 through 69 of this Complaint with the same force and effect as if fully set forth at length herein.

71.     That at all times relevant herein, the Corporate Defendant has been and remains insolvent by virtue of the fact that its liabilities exceed its assets and also because of its inability to pay its debts as they became due.

72.     That as a result of the foregoing, due to the fact that Laken was the Chief Executive Officer and a Director of the Corporate Defendant, Laken became a trustee of the assets of the Corporate Defendant,, and held same in trust for the general creditors of the Corporate Defendant, including KBM.

14

73.     That stated differently, due to the insolvency of the Corporate Defendant, Laken became a fiduciary of KBM, and had fiduciary duties in favor of KBM which were breached by Laken.

74.     That specifically, as a fiduciary, Laek failed to oversee and safeguard the assets of the Corporate Defendant so that they would be available for the benefit of all general creditors including KBM, and also failed to take such steps as are required by his fiduciary status to ensure that the reserve stock issued or to be issued by the Corporate Defendant would be available to meet the obligations owed to KBM.

75.     That Laken failed to exercise due diligence and good faith in fulfilling his fiduciary obligations and failed to take steps to ensure that the assets of the Corporate Defendant, including its stock would be available to meet the financial obligations of the Corporate Defendant.

76.     That by virtue of the foregoing, KBM is entitled to judgment against Laken in an amount to be determined by the Court for no less than $252,200.

WHEREFORE, KBM demands judgment against Defendants as follows:

(i)      For $252,200 on the First Cause of Action;

(ii)     For $220,000on the Second Cause of Action;

(iii)    For an amount of lost profits to be determined by the Court but in no event less than $252,200 on the Third Cause of Action;

(iv)    Awarding KBM its reasonable legal fees and costs of litigation on the Fourth Cause of Action;

(v)     For an award of consequential damages in an amount to be determined by the Court but no less than $252,200 on the Fifth Cause of Action;

(vi)    For a temporary restraining order and a preliminary and permanent injunction against the Defendants directing that said Defendants and their agents, servants and employees immediately take all steps necessary and proper to permit the conversion of debt to stock and to deliver the stock at issue as described above on the Sixth Cause of Action;

(vii)   For an award of damages to be determined by the Court but no less than $252,200 on the Seventh Cause of Action; and

(viii)  For an award of damages of $252,200 on the Eighth Cause of Action; and

(ix)    Together with the costs and disbursements of this action, interest at the rate of default as set forth in the Note; pre-judgment interest as provided by statute, and such other and further relief as the Court may deem just and proper.

Dated: Great Neck, New York
       August 21, 2015

NAIDICH WURMAN LLP

By: _____
       Richard S. Naidich, Esq. (RSN 4102)
       111 Great Neck Road, Suite 214
       Great Neck, NY 11021
       Telephone:516-498-2900
       Facsimile:516-466-3555
       Attorneys for Plaintiff –
       KBM Worldwide, Inc.

16

# NAIDICH WURMAN LLP
### *Attorneys at Law*

RICHARD S. NAIDICH
KENNETH H. WURMAN

JUDAH A. EISNER

111 GREAT NECK ROAD, SUITE 214
GREAT NECK, NEW YORK 11021
TELEPHONE (516) 498-2900
FACSIMILE (516) 466-3555

BERNARD S. FELDMAN
ROBERT P. JOHNSON

OF COUNSEL

April 15, 2015

## NOTICE OF DEFAULT

***VIA E-MAIL (diego@cmgroupinc.biz);***
***(glennbriaken@gmail.com)***
***& FEDERAL EXPRESS***

CMG Holdings Group, Inc.
875 North Michigan Avenue, Suite 2929
Chicago, IL  60611

ATTN:  Glenn Laken, Chief Executive Officer

RE:     KBM Worldwide, Inc. with CMG Holdings Group, Inc.

Dear Mr. Laken:

     As you know, KBM Worldwide, Inc. (the "Investor") made loans to CMG Holdings Group, Inc. (the "Company") and the Company executed, among other things one or more Convertible Promissory Note(s) (the "Note(s)").  The Note(s) provide in pertinent part that the Company shall be in default, if it fails to comply with the reporting requirements of the Exchange Act.

     Based upon the foregoing, the Company is now in default under the Note(s).  Demand is hereby made for the immediate payment as provided in the Note(s) a sum representing 150% of the remaining outstanding principal balances, together with Default Interest as provided for in the Note(s) (the "Default Amount").  Your failure to comply with the demand of this letter will result in the investor, exercising all rights under the Note(s).  Additionally, should the Default Amount not be paid within 5 business days from the date of this letter, in addition to all the other rights and remedies available to it, the Investor shall in its sole discretion convert the Default Amount into equity as provided for in the Note(s).

Very truly yours,

Bernard S. Feldman,
Of Counsel

BSF:ms
Cc: KBM Worldwide, Inc.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK                    Civil Action No.:
KBM WORLWIDE, INC.,

                              Plaintiff,

           -against-

CMG HOLDINGS GROUP, INC. and GLENN LAKEN,

                              Defendants.

---

### SUMMONS AND COMPLAINT

---

NAIDICH WURMAN LLP
ATTORNEYS FOR PLAINTIFF
111 GREAT NECK ROAD - SUITE 214
GREAT NECK, NEW YORK 11021
(516) 498-2900

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

DATED:  August 21, 2015                  Signature:
                                         Print: Richard S. Naidich, Esq.

Service of a copy of the within                        is hereby admitted.
Dated:
                                         Attorney(s) for

---

PLEASE TAKE NOTICE

NOTICE          that the within is a (certified) true copy of an Order entered
OF ENTRY        in the office of the clerk of the within named Court on          , 20___.

NOTICE OF       that an Order of which the within is a true copy will be presented for
SETTLEMENT      settlement to the Hon.                         , one of the judges of
                within named Court, at                      on           , 20____ at
                a.m.

DATED: Great Neck, New York
        August 21, 2015              NAIDICH WURMAN LLP
                                     Attorneys for Plaintiff
                                     111 Great Neck Road - Suite 214
                                     Great Neck, New York 11021
                                     (516) 498-2900